IN THE UNITED SATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BILL BEIGL,<br><br>    Plaintiff,<br><br>v.<br><br>NORTHWEST COLLECTORS, INC.,<br><br>    Defendant. | Case No.: 12-cv-00150<br>Judge Milton I. Shadur<br>Magistrate Sidney I. Schenkier |

## MOTION FOR SANCTIONS

Defendant, Northwest Collectors, Inc. ("Northwest") by its attorneys, David M. Schultz and Corinne C. Heggie, requests this Court enter an order granting sanctions against Plaintiff Bill Beigl ("Beigl") for violating 15 U.S.C. §1692k(a)(3) of the Fair Debt Collection Practices Act ("FDCPA") and granting attorney's fees and costs against Beigl pursuant to §1692k(a)(3), and in support thereof states:

### Introduction

Beigl filed this suit and alleged that he called Northwest on November 2, 2011 and a collector threatened him. Beigl specifically alleged what happened during the call in paragraphs 15 and 16 of his Complaint. He verified discovery responses detailing what happened in the call. He also testified under oath at his deposition about what happened during the November 2, 2011 conversation. Beigl produced a recording of the allegedly offending call that was over six minutes long.

However, the allegations were false and the tape was a fake. During the pendency of the case Northwest insisted, and showed evidence, that it was a fake. Beigl persisted with the case until faced with the threat of sanctions pursuant to F.R.C.P. 11, 15 U.S.C.

§1692k(a)(3) and 28 U.S.C. §1927. (Exhibit A) Even though he dismissed the case, Northwest is still entitled to sanctions under the FDCPA.

## Factual Background

Beigl received voicemails from Northwest during a nine month period in 2011 that were intended for Fred Feiffer. Beigl sent an e-mail February 10, 2011 to Northwest to advise he was not Fred Feiffer. Beigl claimed he told a Northwest collector on a live phone call May 6, 2011 that he was not Fred Feiffer. The centerpiece of Beigl's Complaint is in paragraphs 15-16. Paragraph 16 quote a November 2, 2011 call Beigl claims he had with a Northwest collector as follows:

> Well, we'll find ways to make you pay, we're just gonna keep calling and we're just gonna keep harassing you or doing what we need to do. And it's just— we're just gonna step up whatever we have to do to get you to get this off our books. We're— we're tired of dealing with you. You are obviously Fred Feiffer. That's the information that we have got on file. And this debt just needs to be paid . . . . Are you gonna pay by credit card or by check?
> . . . . .
>
> We can. We will call as often as we want. And if we need to call you every day or a couple times a day, that's what we will do. This needs to get done and it's just going to uh— as I say, we are just gonna step up our efforts, and do whatever we need to do to get this off of our — off of our books. So we'll just step up our efforts and you are the one who is gonna have to deal with it. You're going to find that it's going to be much easier to pay us than to tolerate being hounded for the money. Because that's probably exactly what we're gonna do. We want to get this off of the books.
> . . . .
>
> I am not at liberty to say, I'm just at liberty to say you will wish you had paid this and got this out of the way.

Beigl's one count Complaint is based solely on the November 2, 2011 call.

Northwest answered the Complaint and denied Count I's allegations. On March 19, 2012, Northwest served discovery targeted at finding out how many calls Beigl placed to

130423920v1 0931879

Northwest, when he placed the calls and from what phone numbers. Northwest also produced its account notes that showed a series of voice mail message and no live telephone calls with a Northwest collector on the account. (Exhibit B)

In verified discovery answers, Beigl disclosed he called Northwest on November 2 from 608-969-9402 and stood by the allegations about the November 2 call. Beigl produced a copy of the February 2 e-mail.[1] (Exhibit C) On April 18, 2012, defense counsel met and discussed the fact that Northwest documented no live calls and Beigl had no evidence for paragraphs 15-16 with plaintiff's counsel. At the meeting, counsel produced a micro cassette tape Beigl claimed was a recording of the November 2 call. Northwest incurred the expense of converting the tape to CD.

By the beginning of May, Northwest had listened to the CD of Beigl's recording and investigated in bound calls from the 608 969 9402 number obtained in discovery. Northwest confirmed (1) Northwest did not speak to a live person on November 2; (2) Beigl's recording was over six minutes long and (3) Northwest's phone service provider, Access One, showed a call from 609 969 9402 on November 2, 2011 that was 2 minutes and 1 second long. Northwest answered requests to admit, interrogatories and production requests, consistent with its investigation later that month. Northwest denied Beigl's claims and produced Access One's document showing the 2 minute 1 second in bound call on November 2 from 608-969 9402. (Exhibit D)

On June 7, 2012, Beigl was deposed. He gave testimony under oath the 773-267-6677 phone number was his land line and the micro-cassette tape had recordings made off of his

---

[1] Beigl produced no evidence he actually sent the February 10 e-mail in his Rule 26(a)(1) disclosures. Northwest searched its e-mail records from February, 2011. Northwest never received Beigl's e-mail. Discovery relating to the email was not answered and instead the case was dismissed.

130423920v1 0931879

answering machine from/with Northwest. (Exhibit E) He did not recall how long the November 2 call lasted. He refused to identify the person to whom the 608-969-9402 number belonged because of doctor-patient privilege; although he is not a medical doctor. (Exhibit E, p. 17, 59)

Within days after the deposition, Northwest discussed the factual discrepancies in Beigl's case and questioned the authenticity of his recording with his attorney. (Exhibit F) In supplemental disclosures, Northwest identified 5 female employees and that Beigl's tape was not a recording of a conversation any of the 5 females had with Beigl. (Exhibit G) On June 18, 2012, Beigl's attorneys issued a third party subpoena to Access One for documents. (Exhibit H) In early July, Northwest's attorney contacted Access One about their response to the subpoena. Access One indicated their records were consistent with the records Northwest had (and already produced). Access One responded to the subpoena at the end of July. The records showed a 2 minute 1 second in bound call to Northwest on November 2 from 608-969-9402. (Exhibit I)

On August 1, 2012, Northwest inspected the equipment Beigl testified that he used to make his recording. Beigl was present. At the meeting, Beigl showed counsel two dictaphones, an answering machine and micro cassette tapes. He advised the 608-969-9402 number was Harriet Ick's and that he taped over the original recordings. (Exhibit J) At the end of the meeting, Northwest advised Beigl's lawyer that Beigl's tape was false, the evidence from Northwest and Access One proved it was false, the females to be deposed August 28, 2012 would testify Beigl's tape did not contain their voices and a sanctions letter would be served.

On August 12, 2012, Northwest served a sanctions letter and draft motion pursuant to F.R.C.P. 11, 15 U.S.C. §1692k(a)(3) and 28 U.S.C. §1927. Exhibit A. Beigl forced Northwest to unravel his case. When there was absolutely no doubt, based on all the work Northwest did, that Beigl's tape was fake and his Complaint was thus false, Beigl walked away.

4

**Argument**

A. **Sanctions are warranted when a case is filed in bad faith and with intent to harass.**

Section 1692k(a)(3) permits an award of reasonable attorney's fees and costs to a prevailing defendant if the Court finds plaintiff's action was brought in bad faith and for the purposes of harassment. *See* 15 U.S.C. §1692k(a)(3). Specifically, it provides:

> On a finding by the court that an action under this section was brought in bad faith and for the purposes of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs.

*See* 15 U.S.C. §1692k(a)(3). Courts have found that defendants have proven bad faith and harassment and have awarded attorney's fees under §1692k(a)(3). *Grismore v. Kenneth Eisen & Assoc.*, No. 08-06128, 348 Fed. Appx. 292, 293 (9th Cir. 2009)(district court did not abuse its discretion when it ordered Grismore to pay attorney's fee under §1692k(a)(3)); *Smith v. Argent Mortgage Co.*, No. 07-1409, 331 Fed. Appx. 549, 559 (10th Cir. 2009)(trial court's order that plaintiffs to pay attorney's fees pursuant to §1692k(a)(3) affirmed because trial court record showed plaintiffs acted in bad faith or for harassment as there was no evidence to support their case); *Tucker v. The CBE Group, Inc.*, 710 F. Supp. 2d 1301, 1307 (M.D.Fla. 2010)(sanctions awarded under §1692k(a)(3) because plaintiff persisted in bad faith and with intent to harass when discoverable evidence "would not bear out the majority of the Complaint's claims"); *Rheinhart v. The CBE Group, Inc.*, 714 F. Supp. 2d 1183, 1186 (M.D.Fla. 2010)(sanctions awarded in FDCPA case because plaintiff exhibited "deliberate indifference to obvious facts"); *Black v. Equinox Financial Management Solutions, Inc.* 444 F. Supp.2d 1271, 1271, 1276 (N.D.Ga 2006)(awarding sanctions when plaintiff brought §1692e(10) claim on "nothing more than a hunch" and finding that plaintiff pressed his claim which "could only be attributed to bad faith effort…").

5

### 1. The case was brought in bad faith and for harassment purposes because it was based on false evidence.

Beigl filed and pursued this case through discovery when he had no good faith basis to do so. Beigl represented to the court when he filed the Complaint, that was based only on his fake recording, that his pleading was based on "factual contentions" that had "evidentiary support." *See* F.R.C.P. 11(b)(3). This was a misrepresentation.

Beigl served discovery, requests to admit, two sets of interrogatories and production requests that were at least in part directly related to the call. Beigl's attorney produced the recording at a meeting on April 18, 2012. At the meeting, counsel for Northwest questioned its authenticity. The follow-up review and investigation showed that: (1) Northwest did not speak to a live person on November 2, (2) Beigl's recording was over six minutes long and (3) Northwest's phone service provider, Access One, showed a call from on November 2, 2011 that was 2 minutes and 1 second long. Northwest responded to Beigl's written discovery and denied a live call between Beigl and any female collector occurred as alleged in the Complaint. (Exhibit D) Northwest produced Access One records showing there was an in bound call to Northwest on November 2, 2011 but it was 2 minutes and 1 second long, not six minutes like in Beigl's tape. (Exhibits B and D)

Beigl verified discovery answers about the veracity of the recording. He then testified, under penalty of perjury, in his deposition about the recording. The recording was played for Beigl at the deposition. (Exhibit E, pp.116-122) He testified the recording was a call between himself and a Northwest collector on November 11, 2011 but he did not know how long it was. (Exhibit E, pp. 62-64, 123-124) Beigl testified Northwest made him feel threatened to pay a debt that belonged to someone else. (Exhibit E, pp. 64-65; 128-129) Beigl would not provide the name of the person to whom the 609 969 9402 belonged citing an inappropriate privilege and

Northwest's counsel was forced to insist for the name in writing after the depositions. (Exhibit E, pp. 17, 59; Exhibit K)

Beigl subpoenaed Access One's records but Access One's response proved, yet again, that the recording was not that of a call between Beigl and a Northwest collector on his recording. (Exhibit I) Beigl's recording was four minutes too long.

Beigl thus made Northwest answer the complaint, respond to written discovery, depose him, and defend the case for six months despite the fact that as early as March, 2012, Northwest's, and then Access One's, evidence consistently demonstrated the recording was fake. Beigl sued Northwest for phone harassment and relied on a fabricated recording and false allegations in a Complaint. Beigl's actions demonstrate he pursued Northwest in bad faith. *Shipley v. Trans Union Corporation*, No. C04-2560P, 2006 WL 1515594, *2-3 (W.D. Wash. May 25, 2006)(finding plaintiff acted in bad faith and with intent to harass and awarding attorney's fees and costs when plaintiff altered police reports); *Williams v. Experian Info. Solutions*, No. 3:09–CV–1146–L, 2010 WL 572098, at * 1–2 (N.D.Tex. Feb. 10, 2010)(bad faith found when plaintiff's pleading were deficient and falsified).

### 2. Beigl filed suit to harass Northwest.

Beigl's pursuit of Northwest through the federal court system was to harass Northwest. Beigl started harassing Northwest before he even filed his Complaint.

Beigl is not an inexperienced litigant. Before suing Northwest, Beigl filed at least two, maybe three, complaints based on phone harassment claims. (Exhibit E, p. 92; Exhibit L) Here, Beigl amassed upwards of 31 messages that Northwest left on his answering machine for another person. (Exhibit E, p. 127) Beigl then copied the messages, along with his fake recording, onto a micro cassette to start to build his case against Northwest. Beigl called the police on Northwest

7

on November 2, 2011. (Exhibit C, Beigl 14-16) The same day he complained to the Illinois Attorney General, the FTC and the BBB. (Exhibit C, Beigl 5, 8, 13, 20) After gathering the voice mail messages, fabricating the recording and documenting his complaints with law enforcement and consumer advocacy institutions, Beigl filed his complaint in January, 2012.

Beigl had his sights on Northwest. When he believed he had enough "evidence," he went to court and sued. It is difficult to see how Beigl's obvious use of fake evidence and blatant disregard for Northwest's documents and discovery can be interpreted as anything other than an intent to harass Northwest. Beigl did not quit until he was threatened with sanctions and told, yet again, that his recording was nothing more than a call he staged between himself and someone who was not a Northwest collector that was over six minutes long, not 2 minutes and 1 second long. Courts have sanctioned litigants for harassment and Beigl should be too. *Tucker v. The CBE Group, Inc.*, 710 F. Supp. 2d 1301, 1306 (M.D.Fla. 2010)(court specifically noted that bad faith and harassment shown under §1692k(a)(3) in part by plaintiff accumulating calls for the purpose of filing suit).

WHEREFORE, Defendant, Northwest Collectors, Inc., respectfully requests this Court enter an order granting Defendant's Motion for Sanctions pursuant to 15 U.S.C. §1692k(a)(3) against Plaintiff Bill Beigl and for any other relief this Court deems just and appropriate.

Respectfully submitted,

David M. Schultz
Corinne C. Heggie
Hinshaw & Culbertson LLP
222 N. LaSalle, Suite 300
Chicago, IL 60601
312-704-3000
dschultz@hinshawlaw.com
cheggie@hinshawlaw.com

By: /s/ *Corinne C. Heggie*
One of the attorneys for Defendant,
Northwest Collectors, Inc.